### FRANKLIN COUNTY.

MAY TERM, 1882, No. 70.                         June 1, 1882.

## Appeal of William M. Leidy *et al.*

· 1. Where a grandmother was living with her grandson, and the evidence shows that, instead of the existence of a mere family relation, the payment of board was contemplated, a reasonable amount will be allowed out of her estate for the payment of such board.

2. Between parent and child living in the same family, such claim must be supported by evidence of an express contract. It is the same when one stands *in loco parentis*. In other cases the ordinary rule prevails, unless and until it be shown that in fact the parties were not acting on the footing of a contract.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of William M. Leidy, John A. Leidy, Eliza A. Clarkston, Rebecca J. Donalds, and Matilda Donalds from the decree of the Orphans' Court of *Franklin County*, overruling the exceptions to the report of an auditor appointed to make distribution of the balance in the hands of Frederick Dice, executor of the estate of Anna Mary Ashway, deceased.

Mrs. Anna Mary Ashway died in Franklin county in January, 1879, leaving an estate valued at nearly $3,000. For the last ten years of her life she had made her home with her grand-son, Frederick Dice. During this time, she was a member of his family, assisting in such light household tasks as were possible at her age. She died in his house, and was buried therefrom.

On May 20, 1869, a month or two after Mrs. Ashway went to live with her grandson, she executed a will, in which, among other provisions, she bequeathed all the furniture then in her possession to her grand-son, Frederick Dice, and also made him sole executor thereof.

On December 8, 1880, he filed his account, in which he charged himself with $2,971 87, and claimed credit for $1,100 55. Among the credits claimed was the following: For boarding and support of decedent from January, 1873, to date of death, January, 1879, at $2 50 per week, $780.

Exceptions were filed to the allowance of this credit by the appellants, and the account was referred to W. J. Zacharias, as auditor, before whom the testimony of two witnesses was offered in support of the allowance.

*Mrs. Eliza Sellers* testified as follows: "I had a conversation with my grandmother at my home about her (grandmother) living with Frederick Dice. I do not remember when exactly, but I think it was in the month of May, 1873. I do not remember of any one being present. She told me she liked it very much at Frederick's; that she would stay there as long as she lived, if he would keep her that long. That was the year my mother lay sick at my house, and I wanted grandmother to stay at my house, but she would not stay. During this conversation in regard to her staying with me, she spoke of her home at Frederick's; she said that she could not earn her boarding, and that Frederick was to be well paid for keeping her; she mentioned no amount."

*Mrs. Elimina Snyder* testified: "I had a conversation with my grandmother in regard to her staying at Frederick Dice's. This conversation was in 1871 at my home; she was there on a visit. She said she was not well, and wanted to go home to Frederick's; that she was giving him one hundred dollars per year for keeping her, and she wanted to be there. She told me that several times during her stay, which was for a few days. She said if she got older he was to have more, as when she got older she would be more trouble."

On cross-examination she said: "I think she said that he was to have $100 per year for keeping her. My grandmother always spoke in German. She sometimes said he was to have it, and sometimes said she would give him $100 per year; but she never said she had given it to him. That is all she said on the subject."

*Q.* Did you not understand from the conversation which you had with your grandmother, and the words used by her, merely that she intended to pay Fred, and not that she had any bargain with him?

*A.* "She said that he was to have it, and did not say that she had any bargain with him, or anything else. I don't know what she meant by 'he was to have it,'

whether she meant that she intended to pay to him, or that she had a bargain with him to do it. She did not say that she had promised to pay Fred, but just said that was what she was to pay him. She sometimes said that was what she would pay, and sometimes said that he was to have it."

On July 26, 1881, the auditor filed his report sustaining the exceptions, disallowing the accountant the credit claimed for $780, and reporting a distribution accordingly. To this report exceptions were filed by the accountant, and sustained by the Court in the following opinion filed September 27, 1881, by ROWE, P. J.:

"I think the auditor erred in not allowing the claim of Frederick Dice for support and maintenance of the decedent, and that the exceptions filed to his report must be sustained."

"Frederick Dice was the grand-son of Anna Mary Ashway, and the executor of her last will. In his account he claimed credit for $780 for boarding, etc., of decedent from January 1, 1873, to January 25, 1879, the date of her death, being $2 50 per week. The auditor disallowed the claim on the ground that, in the absence of an express contract, the boarding, etc., must be attributed to the family relationship."

"Between parent and child living in the same family, a claim such as this must be supported by evidence of an express contract. It is the same when one stands *in loco parentis*. In other cases, the ordinary rule prevails, unless and until it be shown that in fact the parties were not acting on the footing of a contract. This may be shown by the circumstances, and the nearer the relationship, the less expectation of payment."

"In the case in hand, the facts point clearly to a contract relation."

"It seems that about April or May, 1869, Anna Mary Ashway went to live with her grandson, Frederick Dice. He had a family of his own. She had children living in the county and with comfortable homes. She was then about eighty-three years of age, and could not earn her boarding any more, and had an estate which, at her death, amounted to $3,000."

"About the time she went to Frederick's, namely, 20th May, 1869, she made a will, which was duly probated after her decease, wherein she gave her property to her children, except a portion of her furniture, which she gave to her said grandson, Frederick Dice. She lived in his family, and was provided for by him. and was well

and kindly treated from the time she went there until she died. The services were worth $2 50 per week, making, for the six years immediately preceding her death, $780."

"In 1871, being on a visit to Elemina Snyder, a granddaughter, and a sister of Frederick Dice, she said she was not well and wanted to go home to Frederick's; that she was giving him one hundred dollars per year for keeping her, and she wanted to be there. She said if she got older he was to have more, as she would become more troublesome. Again, in May, 1873, to Eliza Sellers, her granddaughter, she said she liked it very much at Frederick's; that she would stay there as long as she lived, if he would keep her that long; that she could not earn her boarding any more; and that Frederick was to be well paid for keeping her, and, on this occasion, she declined to stay with Mrs. Snyder."

"Now, in view of all this, it seems clear to me that the intention and understanding of the parties was that she was to pay for her living."

"The accountant is therefore to be allowed the credit he claimed for her support."

"The exceptions are sustained and the report recommitted to the auditor, that distribution may be made according to the principles of this opinion."

The amended report of the auditor, under the above opinion, was filed November 28, 1881, and exceptions were filed thereto. On December 20, 1881, the Court overruled the exceptions, and confirmed the amended report.

From this decree, William M. Leidy *et al.*, distributees under the will, appealed, assigning that the Court below erred in setting aside the original report of the auditor, disallowing the credit of $780, and in confirming the amended report as directed in the opinion of the Court.

*John C. Shumaker* and *J. B. Raby* for the appellants.

Between parent and child, services are presumed to be rendered from motives of natural affection, and there can be no recovery in the absence of an express contract to pay for them: Walker's Est., 3 Rawle, 249; Houck *v.* Houck, 11 W. N. C., 262. The rule is the same as to other members of the same family living together and closely related, as brother and sister, grandparent and grandchild: Duffey *v.* Duffey, 8 Wr., 399; Butler *v.* Slam, 14 Wr., 456; Lantz *v.* Frey, 2 Harris, 201; Defrance *v.* Austin, 9 Barr, 309; Candor's Appeal, 5 W. & S., 513;

[Bane *et al. v.* Sutton.]

Davies *v.* Davies, 9 Carr. & Payne, 87; Updike *v.* Titus, 2 Beasly, 153; Williams *v.* Hutchinson, 3 Comstock, 317; Hall *v.* Finch, 29 Wis., 278; Hartman's Appeal, 3 Gr., 271; Bash *v.* Bash, 9 Barr., 260; Cummings *v.* Cummings, 8 Watts, 366; Robinson *v.* Cushman, 2 Den., 149; Bowen *v.* Bowen, 2 Bradf., 336; Abercrombie's Est., 1 W. N. C., 234; Kneass' Est., 6 Phila., 353; Lynn *v.* Lynn, 5 Casey, 369; Hertzog *v.* Hertzog, 5 Casey, 465; Gordner *v.* Heffley, 13 Wr., 164; Neall *v.* Gilmore, 29 P. F. Sm., 427.

*Kennedy & Stewart* for appellee.

Relationship alone does not overcome the presumption which the law raises, that a promise to pay is intended when personal services are rendered, except in the case of parent and child. In all other cases there must be evidence beyond the relationship that the creation of no debt was intended: Horton's Appeal, 13 Norris, 62; Neal *v.* Gilmore, 29 P. F. Sm., 422.

The evidence shows that compensation was to be made for the services rendered: Smith *v.* Milligan, 7 Wr., 107.

OCTOBER 2, 1882.—The opinion of the Court was delivered by TRUNKEY, J.:

Mrs. Ashway and Frederick Dice were not members of the same family, occupying the same house, till she went to live with him, in 1869. Instead of the evidence showing a mere family relation, it shows that they contemplated payment for her board, and dealt as debtor and creditor. Much of what was said in Miller's appeal, just decided, applies to this case. The decree is affirmed for the reasons given by the learned Judge of the Orphan's Court.

Decree affirmed and appeal dismissed at costs of appellants.